John Robert SMITH, Shirley Hall, and Gene Walker Plaintiffs

v.

Eric CLARK, Secretary of State of Mississippi; Mike Moore, Attorney General for the State of Mississippi; Ronnie Musgrove, Governor of Mississippi; Mississippi Republican Executive Committee; and Mississippi Democratic Executive Committee Defendants

and

Beatrice Branch; Rims Barber; L.C. Dorsey; David Rule; James Woodard; Joseph P. Hudson; and Robert Norvel Intervenors

No. CIV.A. 3:01–CV–855WS.

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 15, 2002.

Arthur F. Jernigan, Jr., Watson & Jernigan, P.A., Jackson, for John Robert Smith, Shirley Hall, Gene Walker, plaintiffs.

T. Hunt Cole, Jr., Office of the Attorney General, Michael B. Wallace, Phelps Dunbar, John G. Jones, Jones & Funderburg, Herbert Lee, Jr., Lee & Associates, Robert B. McDuff, Robert B. McDuff, Attorney, Jackson, for Eric Clark, Secretary of State of Mississippi, Mike Moore, Attorney General for the State of Mississippi, Ronnie Musgrove, Governor of Mississippi, the Mississippi Republican Party Executive Committee, Mississippi Democratic Party Executive Committee, defendants.

E. GRADY JOLLY, United States Circuit Judge, HENRY T. WINGATE, United States District Judge and DAVID C. BRAMLETTE, United States District Judge.

## ORDER

E. GRADY JOLLY, Circuit Judge.

This matter is before us on the plaintiffs' motion for preliminary injunction, as amended. In a previous order, we deferred ruling on that motion until January 7, 2002, in order to give the State authorities an opportunity to timely carry out their duty to reapportion Mississippi's congressional districts. We recognize that the primary responsibility for reapportionment lies with the State and that if the State can timely reapportion itself in a constitutionally acceptable manner, federal courts have no duties to draw congressional districts. Because, for reasons that follow, it now appears uncertain whether the State authorities can have a redistricting plan in place by March 1, 2002 (the deadline to qualify for candidacy for the United States House of Representatives in Mississippi, *see* Miss.Code Ann. § 23–15–299), we conclude that it is necessary to assert our jurisdiction and to take under advisement

the plaintiffs' motion for preliminary injunction, and, in response to plaintiffs' motion, we will begin to draft a plan for reapportioning Mississippi's congressional districts in order to assure that the congressional election schedule as provided under the laws of the State of Mississippi is timely implemented under a plan that satisfies both the requirements of the Constitution and § 5 of the Voting Rights Act. We begin by setting out the background facts.

I

As a result of the 2000 Decennial Census, the number of congressional representatives allotted to the State of Mississippi has been reduced from five to four. The attempts of the Mississippi Legislature to reapportion the State's congressional districts—a process that began some several months ago—have been unsuccessful.

In October 2001, the Intervenors in this case filed an action in the Chancery Court for the First Judicial District of Hinds County, Mississippi, against Mississippi's Secretary of State, Attorney General, and Governor. The complaint alleged that the Legislative Standing Joint Congressional Redistricting Committee failed timely to submit Mississippi's new redistricting plan pursuant to Miss.Code Ann. § 5–3–129, and sought an injunction adopting and directing the implementation of a congressional redistricting plan.

On November 1, the plaintiffs, three Mississippi registered voters, filed this action in the United States District Court for the Southern District of Mississippi against the Mississippi Secretary of State, Attorney General, and Governor, as well as the Mississippi Republican Executive Committee and the Mississippi Democratic Executive Committee. The complaint alleged that Mississippi's districting plan dividing the State into five congressional districts cannot be enforced under federal law, and that any plan subsequently adopted by State authorities cannot be enforced until it has been precleared under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. The plaintiffs sought injunctive relief to ensure that the State of Mississippi has a constitutional congressional redistricting plan in place in time to comply with the March 1, 2002 candidate qualification deadline. Specifically, the plaintiffs asked us to enjoin enforcement of the current congressional districting plan, Miss. Code Ann. § 25–15–1037, and to order that, in the 2002 congressional election, Mississippi's congressional representatives be chosen by the electors of the State at-large or, alternatively, that we adopt a new congressional redistricting plan.

This three-judge court was appointed by the Chief Judge of the United States Court of Appeals for the Fifth Circuit, The Honorable Carolyn Dineen King, and was convened pursuant to 28 U.S.C. § 2284, which provides that a district court of three judges "shall be convened when ... an action is filed challenging the constitutionality of the apportionment of congressional districts."

In an order dated November 19, 2001, the Chancery Court urged the Legislature and the Governor to renew their efforts to enact and implement a congressional redistricting plan as soon as possible. On December 3, the Chancery Court entered a scheduling order allowing the parties until the end of December to complete discovery and scheduling trial on January 14, 2002.

On November 30, 2001, we conducted a hearing on the plaintiffs' motion for preliminary injunction, the State defendants' motion to dismiss, and two motions for intervention. We entered an order on December 5, in which we granted the motion for leave to intervene filed by the plaintiffs in the Chancery Court action. Recognizing that "the Constitution leaves with the States primary responsibility for appor-

tionment of their federal congressional ... districts", *Growe v. Emison*, 507 U.S. 25, 34, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), we deferred ruling on the plaintiffs' motion for preliminary injunction so that State authorities might have further opportunity to timely carry out their duty to reapportion Mississippi's congressional districts. We stated, however, that if it was not clear by January 7, 2002, that the State authorities can have a redistricting plan in place by March 1, we would assert our jurisdiction and proceed expeditiously to rule on plaintiffs' motion for preliminary injunction and, if necessary, draft and implement a plan reapportioning the State's four congressional districts.

On December 7, the Chancery Court entered an amended scheduling order, ordering that discovery be completed by December 13, and moving the trial date up to December 14.

On December 13, the Mississippi Supreme Court denied petitions for a writ of prohibition and a writ of mandamus filed by the State defendants and other petitioners challenging the Chancery Court's jurisdiction. In a two-page order, the Mississippi Supreme Court held that the Chancery Court had jurisdiction to conduct congressional redistricting and stated that "[a]ny congressional redistricting plan adopted by the chancery court ... will remain in effect, subject to any congressional redistricting plan which may be timely adopted by the Legislature." The Court cited no authority and gave no explanation for its ruling. *In re Mauldin*, No.2001–M–01891 (Miss. Dec. 13, 2001).

Trial commenced in the Chancery Court on December 14, and continued through December 18, with closing arguments on December 19. Eleven redistricting plans were submitted into evidence, and approximately twenty witnesses testified. The State defendants neither presented evidence, proposed any redistricting plans, nor participated at the trial. In an Opinion and Order issued on December 21, the Chancery Court adopted a plan as submitted by the plaintiffs (intervenors in this action). We are advised by the parties that the Chancery Court's judgment will be appealed to the Mississippi Supreme Court.

On December 17, the plaintiffs in this action moved for leave to amend their complaint and motion for preliminary injunction. The plaintiffs contend that the Chancery Court's entertaining of a congressional redistricting suit and the Mississippi Supreme Court's December 13 Order holding that the Chancery Court had jurisdiction constitute changes in practices and procedures with respect to voting, covered by the preclearance requirements of § 5 of the Voting Rights Act. The plaintiffs have asked us to enjoin the defendants from conducting any election using the current districting plan (which all parties agree is unenforceable), and to enjoin all actions to be taken pursuant to the Mississippi Supreme Court's December 13 order and the Chancery Court's judgment until such time as both have been approved by federal authorities pursuant to § 5 of the Voting Rights Act. In addition, the plaintiffs asserted that, irrespective of whether the plan adopted by the Chancery Court is precleared by federal authorities, the Chancery Court's action violates Article I, § 4 of the United States Constitution, which provides that "The Times, Places and Manner of Holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof ...."[1] The plaintiffs contend that

---

1. The remaining part of this sentence reads as follows: "but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." There is a specific federal statute giving federal courts jurisdiction over reapportionment

the Chancery Court's imposition of a redistricting plan usurps authority delegated to the Mississippi Legislature under Art. I, § 4. Finally, although they were not parties in the Chancery Court action, the plaintiffs assert that the Chancery Court violated the due process rights of parties to that action. The plaintiffs have requested that we order the election of congressional representatives by the electors of the State at-large, pursuant to Miss.Code Ann. § 23–15–1039 and 2 U.S.C. § 2a(c)(5) or, alternatively, that we devise a new, constitutional districting plan.

On December 26, 2001, the Attorney General of Mississippi submitted the Chancery Court judgment and the procedural orders of the Chancery Court and the Mississippi Supreme Court to the Attorney General of the United States for preclearance, and requested expedited consideration and preclearance by January 31, 2002.

We conducted a hearing on the Plaintiffs' Motion for Leave to Amend and for Preliminary Injunction on December 28, 2001. In the light of the State defendants' acknowledgment that the current districting plan (dividing the State into five congressional districts) is unenforceable, and their further acknowledgment that the plan adopted by the Chancery Court cannot be implemented unless and until it is precleared by federal authorities, we directed the parties to file briefs on whether there remains a justiciable case or controversy before us.

For the reasons that follow, we conclude that this case is not moot, and that it is necessary to exercise our jurisdiction in

order to ensure that an enforceable congressional redistricting plan is in place prior to the March 1, 2002 deadline for candidates to qualify for the 2002 congressional election.[2]

## II

Historically, as provided by state and federal law, the Mississippi Legislature—not the state courts—has enacted congressional redistricting plans. *See* Miss.Code Ann. §§ 5–3–121, 5–3–123, 5–3–127, 5–3–129; U.S. Const. Art. I, § 4. Indeed, in 1932, the Mississippi Supreme Court held that state courts did not have jurisdiction over actions challenging congressional redistricting plans. *Brumfield v. Brock,* 169 Miss. 784, 142 So. 745 (1932); *Wood v. Gillespie,* 169 Miss. 790, 142 So. 747 (1932).

The circumstances that gave rise to the present controversy—the Legislature's failure to reapportion the State's congressional districts—are addressed in Miss. Code Ann. § 25–15–1039, which was precleared by the United States Attorney General in 1986. It provides:

> Should an election of representatives in congress occur after the number of representatives to which the state is entitled shall be changed, in consequence of a new apportionment being made by congress, and before districts shall have been changed to conform to the new apportionment, the representatives shall be chosen as follows: ... if the number of representatives shall be diminished, then the whole number shall be chosen by the electors of the state at large.

■ Thus, the Mississippi Supreme Court's December 13 Order holding that

---

matters. *See* 28 U.S.C. § 2284(a) ("A district court of three judges shall be convened ... when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.")

**2.** All of the parties seem to concede that there is a live controversy and that this court has jurisdiction to decide the issues that are presented, including implementing a redistricting plan, although whether, when and how we should exercise that jurisdiction is very much in dispute.

the Chancery Court has jurisdiction to reapportion Mississippi's congressional districts as a matter of state law clearly appears to be a change in Mississippi's election procedures that must be precleared by federal authorities pursuant to § 5 of the Voting Rights Act. *See Allen v. State Bd. of Elections,* 393 U.S. 544, 566, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (in § 5, "Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way"); *In re McMillin,* 642 So.2d 1336, 1339 (Miss. 1994) (chancery court's enjoining of judicial primary elections "constitutes a change in voting standards, practices and procedures ... subject to § 5 preclearance or approval ... [that,] even if within the jurisdiction of the chancery court to grant, cannot be enforced without preclearance"). As we have noted, the State defendants at least implicitly acknowledge that this is a change in state law which must be precleared, because they have included the Mississippi Supreme Court's Order in their submission to the Attorney General of the United States. Furthermore, at the December 28 hearing, the State defendants represented that they did not disagree with the Plaintiffs' interpretation of the Department of Justice regulations.

■ In addition, as acknowledged by the State defendants and the intervenors, the Chancery Court's judgment adopting a congressional redistricting plan is a change from the previous districting plan set forth in Miss.Code Ann. § 23–15–1037, and from the at-large plan set forth in Miss.Code Ann. § 23–15–1039 for circumstances such as the present ones. That change likewise cannot be enforced unless and until it is precleared under § 5. *See Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). The State defendants have represented to us that they have no intention of taking any steps to administer, implement, or enforce the Chancery Court's districting plan until § 5 approval is obtained.

■ Although the State authorities have requested that their preclearance submission be given expedited consideration by the Attorney General of the United States, we have serious doubts whether the Mississippi Supreme Court's Order and the plan adopted by the Chancery Court pursuant to that order will be precleared prior to the March 1 candidate qualification deadline. In the first place, if the Chancery Court's judgment is appealed to the Mississippi Supreme Court, it is not at all clear that the Attorney General of the United States will act on the State's preclearance submission.[3] The regulations of the Department of Justice provide that, "with respect to a change for which approval by ... a State ... court ... is required, the Attorney General may make a determination considering the change prior to such approval if the change is not subject to alteration in the final approving action." 28 C.F.R. § 51.22(b).

We have no way of knowing whether the Mississippi Supreme Court will hear any appeal and, if it does, when it will render a decision.[4] Even if the Attorney General of

---

**3.** The Mississippi Republican Executive Committee has advised this court that it intends to appeal the Chancery Court's judgment to the Mississippi Supreme Court.

**4.** It is uncertain whether the Mississippi Supreme Court will hear any appeal, inasmuch as the language of its December 13 Order might be interpreted to mean that the Court has decided that the State's congressional districts should be reapportioned by a single Chancery Judge with no review by the State Supreme Court. The Mississippi Supreme Court stated: "Any congressional redistricting plan adopted by the chancery court in cause no. G–2001–1777 W/4 will remain in effect, subject to any congressional redistricting plan which may be timely adopted by the Legislature."

the United States decides to consider the State's submission despite the pendency of an appeal of the Chancery Court's judgment, it is possible that either the Mississippi Supreme Court's Order or the plan adopted by the Chancery Court could be changed during the pendency of the pre-clearance proceeding. In determining that the Chancery Court had jurisdiction to conduct congressional redistricting, the Mississippi Supreme Court was ruling on petitions for a writ of prohibition and a writ of mandamus, and not deciding the merits of the case. Assuming it decides to hear an appeal of the Chancery Court's judgment, the Court may reconsider the issue of the Chancery Court's jurisdiction, or it may decide to place limits on that jurisdiction. It is also possible that the Court may make changes in the plan adopted by the Chancery Court. In either event, any such changes would have to be precleared by federal authorities, making it even more unlikely that a precleared plan will be in place prior to March 1.

Even if we set aside our concerns about the lack of finality, the wide-ranging implications of the Mississippi Supreme Court's Order—giving a single chancery judge the power to reapportion the entire State's congressional districts, together with the possible absence of any appeal to a higher court—raise uncertainties whether the Order will be precleared. That broad grant of power presents quite serious concerns, including the potential for violations of § 2 of the Voting Rights Act. Furthermore, it is not at all clear that this change is not retrogressive with respect to minority voting rights, in the sense that redistricting decisions will depend on the individual views of an individual judge, elected by a small percentage of the State's voters. Furthermore, reapportionment questions arise in many contexts other than congressional redistricting—including redistricting of the Mississippi Legislature—and it is uncertain how far the reach of the chan-

cery courts may now extend in all reapportionment matters. Consequently, it appears to us that, at the very least, the Attorney General of the United States will consider those implications very carefully, and might perhaps request more information from State authorities to clarify what is embodied in the change and the consequences thereof.

We very much appreciate that the United States Supreme Court has stated that "state courts have a significant role in redistricting." *Emison,* 507 U.S. at 33, 113 S.Ct. 1075 (citing *Scott v. Germano,* 381 U.S. 407, 409, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965)). These cases are highly relevant to the matters before us today. There are, however, distinctions to be made: *Germano,* the precedent cited for *Emison,* dealt exclusively with reapportionment of state legislative districts, not redistricting for the United States Congress, and neither of the states involved in *Emison* and *Germano* (Minnesota and Illinois) was subject to the preclearance requirements of § 5 of the Voting Rights Act. We also note that in *Emison* the parties in the state court action had no control over the selection of the court in which their case was heard. Instead, the Minnesota Supreme Court appointed a special panel consisting of one appellate judge and two district judges to hear the case. 507 U.S. at 28, 113 S.Ct. 1075. Although *Emison* (which dealt with both legislative and congressional redistricting and the reasoning is somewhat fused between the two) supports a conclusion that state courts have a role in congressional redistricting, as well as state legislative redistricting, the Court did not have before it, and thus did not consider, the effect of Article I, § 4 of the United States Constitution on congressional redistricting, which clause seems to designate congressional election matters to the legislature of a given state. Consequently, we have some

uncertainty as to how *Emison* and *Germano* will be applied by the United States Attorney General in considering the Mississippi Supreme Court's Order in the context of a § 5 preclearance proceeding in a congressional redistricting case.

There is yet another reason why the Chancery Court's adoption of a redistricting plan fails to assure that an approved plan will be in place by March 1: If the Mississippi Legislature chooses to act, the Mississippi Supreme Court has said that the Legislature's action will nullify the plan adopted by the Chancery Court. Should the Legislature act, any plan adopted by it would have to be precleared by federal authorities, and there are uncertainties as to whether such preclearance could be obtained before March 1— although we acknowledge that there are fewer potential preclearance problems in a legislative plan than in the present court-ordered plan.

Finally, even if the Attorney General of the United States approves the changes submitted for preclearance, the plaintiffs in this action have challenged the authority of the state court to conduct congressional redistricting under Article I, § 4 of the United States Constitution ("The Times, Places and Manner of Holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ."). The plaintiffs contend that Art. I, § 4 vests in state legislatures the power to conduct congressional redistricting, leaving no room for state courts to impose a redistricting plan as a matter of state, not federal, law. That question appears to remain for our decision, irrespective of whether the changes are precleared.

The State defendants and the Intervenors have suggested that there is no need for this court to act because no one intends to implement and enforce either the current districting plan (dividing the State into five congressional districts) or the plan adopted by the Chancery Court, absent preclearance. The State defendants and the Intervenors have suggested that the March 1 candidate qualification deadline is not set in stone and that it is not necessary that district lines exist on March 1. We are fully convinced, however, that such an election change would create confusion, misapprehension and burdens for the voters, for the political parties, and for the candidates. Many voters want to participate in the election process to a greater extent than mere voting. They want to personally know the candidates, to select their choice, to give money to their selection and to organize the people in their precincts or counties in the campaign for their choice. Given that all previous districts are being jumbled by the loss of one congressional representative, sorting out these new problems will take all the pre-primary time that the present statute allows. If we begin to delay the establishment of election districts and advance qualifying dates, such voters who want to become fully involved in the process will not timely know in which district they are going to be, and thus will not timely know where and with whom to become involved. The same situation will exist for the candidates. Postponing the election schedule means that the candidates and political parties would encounter campaign and election burdens, that is, significant time constraints on getting acquainted with new voters, establishing organizations in new election districts and the multiple new precincts and counties therein, raising campaign funds within the new districts, developing strategies for particular geographic areas, etc. Indeed, postponing the election schedule is inconsistent with the position taken in the Mississippi Attorney General's preclearance submission, which

requests expedited consideration in order to allow candidates and voters fully to understand the newly enacted district lines prior to the March 1 qualifying deadline. Furthermore, changing the March 1 date is inconsistent with the position taken by the Intervenors in their amended complaint filed in Chancery Court, in which they assert that, if a plan is not adopted in time for it to be implemented in advance of the March 1 deadline, "the interests of the plaintiffs and all Mississippi voters in enforcement of Mississippi's election laws will be compromised, and their rights under Mississippi law to participate in a congressional election process conducted in a timely manner will be violated." It is also significant to us that changing the deadline would also contravene the Mississippi Supreme Court's recognition of the importance of such deadlines under state election law. *See Adams County Election Comm'n v. Sanders*, 586 So.2d 829, 832 (Miss.1991) (an election schedule that violates the state election code is adverse to the public interest).[5]

In sum, we agree with the State, the Intervenors, and the State Supreme Court that changing the dates of the election schedule would be deleterious to the rights of the voters, the candidates and the political parties, and accordingly we are determined to avoid such a change of dates. Therefore, because it now appears to be uncertain that the State authorities will have a redistricting plan in place by March 1, we will assert our jurisdiction. Accordingly, we will begin the process of drafting and implementing a plan for reapportioning Mississippi's congressional districts.

## III

In concluding, we want to make this point absolutely clear: "The task of redistricting is best left to state legislatures, [which are] elected by the people and [are] as capable as the courts, if not more so, in balancing the myriad factors and traditions in legitimate districting policies." *Abrams v. Johnson*, 521 U.S. 74, 101, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997). *See also White v. Weiser*, 412 U.S. 783, 794, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973) ("reapportionment is primarily a matter for legislative consideration and determination, [and] judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having an adequate opportunity to do so"). Although it may be difficult for the Legislature to adopt a plan at this late date, nothing in this order should be construed as in any way discouraging action by the Mississippi Legislature, to which the United States Constitution and the laws of Mississippi direct the primary responsibility for congressional redistricting. A precleared legislative plan is unequivocally to be preferred over a court-ordered plan, whether federal or state—and this is a view consonant with the views of the Chancery Court and the Mississippi Supreme Court in this case. Without commenting on the ultimate role of the federal courts should the Legislature act, we encourage the Legisla-

---

**5.** The Intervenors ask us to wait until February 24 (the end of the sixty-day period within which the Attorney General of the United States may object to the State's submission) before exercising our jurisdiction. They seem to concede that, after that date, a plan from this court would be appropriate. We, of course, do not decide what course of action we will take if the Chancery Court's plan is approved on or before March 1. We are simply unwilling to wait until a point in time that would not provide ample time for our thorough consideration of the reapportionment issues presented in this case.

ture to act. We should note that, if the Legislature should adopt a plan, it is much more likely to be precleared expeditiously than the plan adopted by the Chancery Court. This is true not only because the United States Constitution grants to state legislatures the duty and authority to enact legislation governing congressional elections, but also because such a plan would not have the potential preclearance encumbrances affecting the court-ordered plan, which we have noted earlier. And if the Legislature acts, and acts quickly, the 2002 congressional elections could be conducted on the basis of a plan emanating from the elected representatives of the people of Mississippi and not from this court. In the meantime, this court will begin the process of holding hearings to fashion a congressional reapportionment plan for the State to assure that the election process operates on schedule and without temporal change. A ruling on the motion for preliminary injunction will come at a later date once all pending matters have been fully vetted.

In accordance with this order, a scheduling conference is hereby set for 3:30 p.m. on Wednesday, January 16, 2002.